O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>THE ZAKEN CORP., a<br>California corporation also<br>d/b/a The Zaken Corproation,<br>QuickSell and QuickSell and<br>TIRAN ZAKEN, individually<br>and as an officer of The<br>Zaken Corp.,<br><br>             Defendants.<br>_____ | Case No. CV 12-09631 DDP (MANx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Dkt. No. 8] |

    Presently before the court is Plaintiff's Motion for a Preliminary Injunction. Having heard oral argument and considered the submissions of the parties, the court denies the motion and adopts the following order.

**I.   Background**

    Defendants (collectively, "Zaken") offer a "Wealth Building Home Business Plan" to consumers.[1] (Declaration of Dani Stagg, Ex. D at 44.) For $148.00, plus shipping, purchasers become Associates

---

[1] This order uses the term "consumer" and "purchaser" interchangeably.

of QuikSell Liquidations and receive a "kit" including instructions on how to locate excess inventories, "'[i]nsider' secret techniques," "powerful and proven strategies," "a simple seven-word phrase that <u>instantly</u> pays [purchasers] cash profits," and other information. (Id. at 57-58, 97.)  Zaken also offers purchasers additional "tools" for an additional charge. (Stagg Dec., Ex. E. at 85-86.)

Under Zaken's plan, consumers identify businesses seeking to liquidate excess inventory. Consumers then notify Zaken, which may proceed to negotiate an acquisition of the excess merchandise. If Zaken is successful in 1) buying the products identified by the consumer and 2) reselling the products at a profit, then Zaken pays purchasers fifty percent of the net proceeds. (Id. at 52-53.) Zaken advertises a "realistic ballpark figure" estimate that "2 to 4 hours a week working this business will earn [participants] an average of $3,000 to $6,0000." (Stagg Dec. Ex. D. at 61.)

Effective March 1, 2012, the Federal Trade Commission broadened the scope of its "Business Opportunity Rule," 16 CFR § 437.0 <u>et seq.</u>, the earliest form of which was first promulgated in 1978. 76 FR 76816. Prior versions of the rule regulated and imposed certain disclosure requirements upon the sale of business opportunities, but only those costing over $500. 76 FR 76818. The 2012 revision eliminated this monetary threshold. 76 FR 76821. The 2012 changes also seek "to address the sale of deceptive work-at home schemes, where unfair and deceptive practices have been both prevalent and persistent." 76 FR 76826. The FTC elaborated that "[s]ellers of fraudulent work-at-home opportunities deceive their victims with promises of an ongoing relationship in which the

2

seller will buy the output that business opportunity purchasers produce, often misrepresenting to purchasers that there is a market for the purchasers' goods and services," and that these schemes "frequently dupe consumers with false earnings claims." Id.

On November 9, 2012, Plaintiff ("the government") filed a complaint against Defendants for violations of the Business Opportunity Rule.[2] Plaintiff now seeks a preliminary injunction enjoining Zaken from violating the Business Opportunity Rule ("the Rule") and ordering Defendants to preserve their assets. Defendants oppose the motion on the ground that the Rule is not applicable to them.

**II. Legal Standard**

Typically, a private party seeking a preliminary injunction must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Defense Counsel, 555 U.S. 7, 20 (2008). Preliminary relief may be warranted where a party (1) shows a combination of probable success on the merits and the possibility of irreparable harm, or (2) raises serious questions and the balance of hardships tips in favor of a TRO. See Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. Under both formulations,

---

[2] The Complaint also alleges that Defendants have violated Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

3

the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury."[3] Id.

Here, however, Section 13(b) of the Federal Trade Commission Act imposes a more lenient standard upon the plaintiff. Federal Trade Commission v. Affordable Media, 179 F.3d 1228, 1233 (9th Cir. 1999). In a statutory enforcement action such as this one, irreparable injury is presumed. Federal Trade Commission v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989). Plaintiff, therefore, need not show irreparable harm. Affordable Media, 179 F.3d at 1233. Thus, as the parties appear to agree, the only issue here is whether the government has shown a likelihood of success on the merits.

**III. Discussion**

Defendants contend that Plaintiffs cannot demonstrate a likelihood of success on the merits because Defendants do not offer a "business opportunity," and therefore do not fall within the ambit of the Business Opportunity Rule. "[A]n agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted.". Long Island Care at home, Ltd. v. Coke, 551 U.S. 158, 171 (2007) (internal quotations and alterations omitted). The Rule defines a business opportunity as a commercial arrangement in which:

> (1) A seller solicits a prospective purchaser to enter into a new business; and

---

[3] Even under the "serious interests" sliding scale test, a plaintiff must satisfy the four Winter factors and demonstrate "that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

4

    (2) The prospective purchaser makes a required payment; and

    (3) The seller, expressly or by implication, orally or in writing, represents that the seller or one or more designated persons will:

    (i) Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the purchaser; or

    (ii) Provide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services; or

    (iii) Buy back any or all of the goods or services that the purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including but not limited to providing payment for such services as, for example, stuffing envelopes from the purchaser's home.

16 C.F.R. § 437.1(c). "Providing outlets, accounts, or customers means furnishing the prospective purchaser with existing or potential locations, outlets, accounts, or customers . . . or otherwise assisting the prospective purchaser in obtaining his or her own locations, outlets, accounts or customers . . . ." 16 C.F.R. § 437.1(m). General advice about business development and training does not constitute "providing locations, outlets, accounts, or customers." Id.

    As an initial matter, Plaintiff has not established that Defendants represents that it <u>will</u> take any action that might fall under the third prong of the Rule. By Plaintiff's own description, Zaken represents that it "will <u>attempt</u> to negotiate a deal with the located company. <u>If</u> that deal is completed <u>and</u> [Zaken] can sell the merchandise <u>at a profit</u>," then Zaken will pay the consumer a portion of the profits. (Mot. at 12 (emphases added)). While the Rule encompasses even implicit representations that a seller will take certain actions covered by Section 437.1(c)(ii) and (iii), the

5

record as currently presented to the court establishes only that Zaken represents that it may take such action.[4]

### A. "Outlets" or "Customers"

The representation issue aside, the government argues that Defendants' scheme falls under 16 C.F.R. § 437.1(c)(ii) because Defendants promise that Zaken will itself serve as purchasers' customer. (Reply at 6.) Zaken argues that it is not consumers' "customer" because it never buys anything from them. (Surreply at 5.)

"When a statute does not define a term, a court should construe that term in accordance with its 'ordinary, contemporary, common meaning.'" Cleveland v. City of Los Angeles, 420 F.3d 981, 988 (9th Cir. 2005) (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).). Courts may look to dictionary definitions to determine the "plain meaning" of a term. Id. at 1034. A customer is "one who purchases a commodity or service," or "one who frequents any place of sale for the sake of purchasing," or "one who customarily purchases from a particular tradesman." Merriam-Webster Online Dictionary, Merriam-Webster, Inc., http:// www.merriam-webster.com (May 2013); Oxford English Dictionary Online, Oxford University Press, http:// www.oed.com (May 2013).

With these definitions in mind, the court agrees that Zaken is not consumers' "customer." The ordinary meaning of the term "customer" requires a purchase of some sort. Zaken, however, never purchases a service from consumers. Consumers, or "lead finders,"

---

[4] Whether those actions constitute conduct falling within the Rule is a separate question, discussed below.

as Zaken styles them, do not necessarily receive or require anything of value in exchange for the information they share with Zaken.[5]  In some cases, the consumers' efforts will not result in any purchase, sale, or exchange of any kind.  Even when the consumer's efforts do ultimately result in purchases and sales of goods, the consumer is not a party to any of those transactions.  Under such circumstances, Zaken's contingency arrangement with consumers does not render it a "customer" under the Rule.

The government also argues that Zaken promises consumers "outlets for the excess merchandise that prospective purchasers identify."  (Reply at 6.)  This argument refers not to Zaken itself as the outlet, but rather to third-party inventory buyers.  While the government is correct that these outlets for excess merchandise are critical to the success of consumers' businesses, the Rule clearly states that a purveyor such as Zaken must represent that it will provide outlets for <u>consumers</u>'goods or services.  The excess merchandise for which Zaken arguably provides an "outlet" does not belong to consumers.

   B.   "Buyback"

Even if Zaken does not provide customers or outlets to consumers, its offer may nevertheless fall under the Rule if it represents that it will "buy back" any of the services that the consumer provides.  16 C.F.R. § 437.1(c)(iii).  While neither the regulation nor its motivating statement of purpose provides any insight as to how one might "buy back" a service, the regulation itself provides one example of an arrangement falling under the

---

[5] It remains unclear at this stage whether consumers can or do share information with liquidators other than Zaken.

7

Rule.[6] Where a purveyor of an opportunity provides a consumer with envelopes and printed material, then "provid[es] payment" to the consumer for the service of stuffing the envelopes, the Rule applies. Id. As discussed above, however, Zaken does not offer to "provide payment" to consumers in exchange for any service or good. Rather, Zaken in essence offers consumers an incentive to provide information that may or may not yield them some ultimate benefit. The government's attempt to apply the Rule to the contingency arrangement between Zaken and its purchasers is therefore inconsistent with 16 C.F.R. § 437.1(c)(iii), which requires, at the very least, that a seller of a business opportunity pay the purchaser for performing a service.

**IV. Conclusion**

For the reasons stated above, Plaintiff has not demonstrated a likelihood of success on the merits. Plaintiff's Motion for a Preliminary Injunction is therefore DENIED, without prejudice.[7]

IT IS SO ORDERED.

Dated: July 31, 2013

DEAN D. PREGERSON
United States District Judge

---

[6] Such an arrangement would likely not entail a "buy back" of services alone, as the purveyor typically would provide the consumer with physical materials before buying them back in assembled form.

[7] This order shall not be read to apply to other relief Plaintiff may seek outside the Business Opportunity Rule.

8